UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN BANKS,

        Petitioner,               Case Number: 00-74613

v.                                    HONORABLE GERALD E. ROSEN

FABIAN LAVIGNE,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

Petitioner Jonathan Banks has filed a *pro se* petition for a writ of habeas corpus. Petitioner, who is currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, challenges his convictions for third-degree criminal sexual conduct and felonious assault. For the reasons set forth below, the Court shall deny the petition.

### II. Facts

Petitioner's conviction arises out of events that occurred in Kristin Drew's dormitory room at Oakland University on February 11, 1997. Robin Buday, a registered nurse at Pontiac Osteopathic Hospital, testified that Ms. Drew was brought to the emergency room on that date and reported that her boyfriend, Petitioner, had entered her dormitory room and told her that he would kill her with a hammer if she did not have intercourse with him. Ms. Drew told Nurse Buday that she had intercourse with

Petitioner because of his threat.

Dr. Mitchell Garfield, an emergency room physician at Pontiac Osteopathic Hospital, testified that he treated Ms. Drew at the hospital on February 11, 1997. Dr. Garfield testified that Ms. Drew told him that Petitioner had raped her and threatened her with a hammer. He examined her and did not find any lacerations, bruising, or tears.

Auburn Hills Police Sergeant Michael O'Hala testified that, during the afternoon of February 11, 1997, he interviewed Ms. Drew at the Auburn Hills police department. Sergeant O'Hala testified that Petitioner had threatened her with a hammer in her dormitory room, and that he told her he would not harm her if she had intercourse with him. Ms Drew told Sergeant O'Hala that she agreed to have intercourse with Petitioner because she was fearful of him.

Ms. Drew testified that she and Petitioner had been dating since April 1993. They lived together from August 1993 to October 1995. After October 1995, they no longer lived together, but were still involved in a relationship. Ms. Drew then testified regarding several violent incidents that occurred over their years together. She testified that, in September or October 1994, Petitioner wanted to have intercourse with her, but she declined his advances. They began arguing and Petitioner hit her in the face with his fist, causing a bloody nose. Ms. Drew called the police, but then informed them that she did not want Petitioner to be arrested. She testified that she believed Petitioner's actions on that date were accidental.

Ms. Drew testified that, on June 12, 1996, Petitioner visited her in Augusta, Maine.

2

During an argument, he hit her in the eye and ear and was arrested. Ms. Drew sustained a cut over her eye, which required four stitches, and her ear was bleeding.

In November or December 1996, Petitioner, who was living in Philadelphia, visited Ms. Drew in Michigan. During an argument, he held her down in a chair, put a knife to her throat and told her he wanted to kill her. She did not contact the police. On December 18, 1996, Petitioner was visiting Ms. Drew and again threatened her. She testified that, when she got out of the shower, Petitioner told her that he had taken out two knives and was going to kill her.

Ms. Drew then testified regarding the events that occurred on February 11, 1997. She testified that Petitioner was visiting her in her room at Oakland University. He wanted to have intercourse with her, but she was not interested. The two argued. Ms. Drew then left the room for a short time. When she returned, Petitioner had a claw hammer in hand and told Ms. Drew that he wanted to hit her in the head. He informed her that he wished he had a gun. Petitioner showed her a list of telephone numbers for various television stations and newspapers which he had compiled. He told Ms. Drew that, after he killed her, he was going to call those numbers to tell them what happened to her. Ms. Drew testified that she was crying and upset. She agreed to have intercourse with Petitioner because she knew he would calm down if she did. On cross-examination, Ms. Drew testified that the intercourse was consensual.

Petitioner testified in his own defense. He admitted that he threatened Ms. Drew with a hammer, telling her he just wanted to kill her. But, he denied forcing her to have

3

intercourse against her will.

### III.  Procedural History

Following a jury trial in Oakland County Circuit Court, during which Petitioner represented himself with stand-by counsel available to him, Petitioner was convicted of third-degree criminal sexual conduct and felonious assault.  On August 14,1997, he was sentenced to four to fifteen years imprisonment for the criminal sexual conduct conviction and two to four years imprisonment for the felonious assault conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the following claim through appointed counsel:

> I.  The trial court violated appellant's due process right to counsel by accepting appellant's equivocal request to represent himself based on a dispute over trial counsel's defense strategy, and refusing to appoint substitute counsel.

Petitioner also filed a *pro per* supplemental brief, presenting the following additional claims:

> I.  Did the magistrate abuse her discretion in granting the continuance of the preliminary examination?
>
> II.  Was the trial court bound to see that no injustice is done the defendant by any improper action of a prosecutor?
>
> III.  Did counsel provide ineffective assistance?
>
> IV.  Did the prosecution and police deliberately suppress evidence favorable to the accused?
>
> V.  Did the prosecution improperly impeach the complainant?
>
> VI.  Are the jury instructions misleading, contradictory, including

>   instructions that should not be included, and overall not fairly presented to protect defendant's rights?
>
> VII. Was the prosecutor's charging decision illegal and ultra vires?
>
> VIII. Did the trial court violate defendant's constitutional right to confrontation when he ordered defendant not to refer to the preliminary examination testimony of the police officer during cross-examination of the officer?
>
> IX. Just prior to the verdict did the trial court abuse its discretion by allowing stand-by counsel to make an *ex parte* record concerning the adequacy of representation prompting the defendant's request to proc[eed] *pro se*?

Petitioner also filed a *pro per* motion to remand to the trial court for a hearing pursuant to People v. Ginther, 390 Mich. 436 (1973). On May 5, 1999, the Michigan Court of Appeals issued an order denying Petitioner's motion to remand. People v. Banks, No. 205939 (Mich. Ct. App. May 5, 1999). On May 11, 1999, the Michigan Court of Appeals issued an opinion affirming Petitioner's conviction. People v. Banks, No. 205939 (Mich. Ct. App. May 11, 1999).

Petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the claim presented by appointed counsel to the Michigan Court of Appeals, and the claims enumerated I, III, IV, VII, and IX, in Petitioner's *pro per* brief to the Michigan Court of Appeals. Petitioner also presented the following issue, which had not been presented to the Michigan Court of Appeals:

>   There is [sic] portions of the trial transcripts were erroneously transcribed and I believe the offer of proof at the evidentiary hearing was a post trial proceeding with the dialogue being manufactured.

The Michigan Supreme Court denied leave to appeal. People v. Banks, No. 115425 (Mich. Dec. 28, 1999).

On October 13, 2000, Petitioner filed the pending petition for a writ of habeas corpus, presenting the following claims:

> I. Petitioner was denied the effective assistance of defense counsel who was unprepared and whose assistance was deficient at a critical stage in the proceedings: the preliminary examination in violation of U.S. Const. Amend. VI.
>
> II. Petitioner was denied the effective assistance of "stand-by" counsel in violation of U.S. Const. Amends. VI and XIV.
>
> III. The prosecution violated Petitioner's due process rights to a fair proceeding – the preliminary examination and a fair trial and to effective assistance of counsel by failing to provide a supplemental police report in violation of the U.S. Const. Amends. V, VI, and XIV.
>
> IV. Petitioner was denied the effective assistance of appellate counsel in violation of U.S. Const. Amend. VI.

The Court dismissed the petition without prejudice because Petitioner failed to exhaust his state court remedies.

Petitioner then returned to state court and filed a motion for relief from judgment presenting his unexhausted claims. The trial court denied the motion on January 23, 2002. People v. Banks, No. 97-151431-FH (Oakland County Circuit Court Jan. 23, 2002). Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. People v. Banks, No. 242143

(Mich. Ct. App. Oct. 23, 2002); People v. Banks, No. 122700 (Mich. March 31, 2003).

After exhausting his state court remedies, Petitioner filed a Motion to Reopen Case. The Court granted the motion and directed Respondent to file a Responsive Pleading. Respondent has filed a responsive pleading. Petitioner filed a reply brief in which he indicated that he would like to delete the second claim from his petition. *See* Reply Brief in Support of Petition for Writ of Habeas Corpus at p. 1. The Court, therefore, shall not address that claim.

## IV.  Analysis

### A.  Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326 (1997).

The AEDPA imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

8

relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 409-11.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

### B.  Alleged Ineffective Assistance of Counsel at Preliminary Examination

In his first claim for habeas corpus relief, Petitioner alleges that he is entitled to habeas corpus relief because his trial attorney provided ineffective assistance.  Petitioner was represented by counsel during his preliminary examination, but represented himself during trial.  Petitioner alleges that counsel was ineffective before and during the preliminary examination because counsel: (1) did not obtain and review available discovery, including medical records; (2) failed to conduct prompt and meaningful investigation; (3) did not appropriately advise Petitioner on his right to a polygraph examination; (4) did not effectively cross-examine the complainant; (5) asked the trial

court to advise complainant of her Fifth Amendment right to be free from compelled self-incrimination; (6) failed to object to the adjournment of the preliminary examination; (7) failed to object to the admission of medical records; (8) failed to file a motion to dismiss; (9) did not object to admission of police officer's hearsay testimony; and (10) did not present evidence which would have negated the assault charge.

As an initial matter, Petitioner requests an evidentiary hearing on his ineffective assistance of counsel claim. Rule 8, Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part:

> [A]fter the answer and the transcript and record of state court proceedings are filed, [the Court] shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

The Court concludes, after careful consideration of the answer and state court record, that an evidentiary hearing is not necessary for the just resolution of Petitioner's ineffective assistance of counsel claim.

Respondent argues that Petitioner's ineffective assistance of counsel claim is barred from federal habeas review because it is procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  Coleman, 501 U.S. at 729-30.  "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar."  Simpson,

94 F.3d at 202.

The last state court to issue a decision regarding this claim, the Michigan Supreme Court, denied leave to appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." People v. Banks, No. 122700 (Mich. March 31, 2003). Respondent argues that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) establishes procedural default.

M.C.R. 6.508(D) applies to motions for relief from judgment, and states, in relevant part:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief . . .

M.C.R. 6.508(D).

12

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D)." Abela v. Martin, 380 F.3d 915, 922 (6th Cir. 2004). Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D) generally as a basis for denying leave to appeal, that reference, without more, is insufficient to establish that the court denied leave to appeal based upon a procedural ground. Id. However, where other "clarifying indicators" clearly demonstrate the state court's intention to invoke an "independent and adequate state procedural rule" by its general reference to 6.508(D), a federal court may determine that federal habeas review is barred. Id. at 923-924. In this case, other clarifying indicators, such as the trial court's addressing the merits of this claim, fail to show that it was the state court's intention to invoke an independent and adequate state procedural rule by its reference to 6.508(D). Thus, the Court finds that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) is insufficient to establish procedural default, and shall proceed to consider the merits of Petitioner's claim.

The trial court was the last state court to issue a reasoned opinion regarding this claim, in its order denying Petitioner's motion for relief from judgment. The trial court stated, in pertinent part:

> The defendant now argues that counsel was ineffective at the preliminary examination. To establish his claim of ineffective assistance of counsel, defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error the

> result of the proceeding would have been different; and (3) that the result of the proceeding was fundamentally unfair or unreliable. People v. Stanaway, 446 Mich. 643, 687-688; 521 N.W.2d 557 (1994); People v. Poole, 218 Mich. App. 702, 717-718; 555 N.W.2d 485 (1996). Additionally, defendant must overcome the presumption that the challenged action was part of the trial strategy. . . .
>
> It does not appear to the Court that counsel's performance at the preliminary hearing had any bearing on the outcome of the trial. The defendant's decision to represent himself at trial, his decision to appear for trial in jail clothes, and the overwhelming evidence against him determined the outcome in this case. There is no reasonable probability that but for counsel's conduct at the preliminary examination the outcome of the trial would have been any different.

People v. Banks, slip op. at p. 2.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399

F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Petitioner's complaints regarding his attorney's representation at the preliminary examination are vague and unsupported. In addition, they involve ancillary matters which did not substantially impact the trial proceedings. Petitioner fails to show that counsel's representation was outside the wide range of professionally competent assistance, or that, because of her representation, the result of the trial was fundamentally unfair or unreliable. Petitioner's conduct and testimony at trial were the most damaging evidence against him. Petitioner admitted at trial that he had threatened Ms. Drew with a hammer. And, although he claimed the intercourse was consensual, his testimony in this regard was unpersuasive and evasive. The Court is not convinced that his attorney's performance at the preliminary examination had any bearing on the outcome of the trial. Therefore, the Court finds that the Michigan state court's finding was not contrary to or an unreasonable application of Supreme Court precedent.

### C. Alleged Violation of Brady v. Maryland

Petitioner next alleges that he is entitled to habeas corpus relief because the prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963), when she failed to inform the defense of the existence of a supplemental police report until trial already had commenced. In Brady, the Supreme Court established that a prosecutor's failure to disclose evidence constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. However, if previously undisclosed evidence is disclosed during

15

trial, no Brady violation occurs unless the defendant is prejudiced by the late disclosure. U.S. v. Word, 806 F.2d 658, 665 (6th Cir. 1986). Petitioner has not shown that he was prejudiced by the tardy disclosure of the police report. Therefore, he is not entitled to habeas relief on this claim.

### D.  Alleged Ineffective Assistance of Appellate Counsel

Finally, Petitioner alleges that he is entitled to habeas corpus relief because his appellate attorney was ineffective in failing to present significant and obvious issues on appeal. He further asserts that appellate counsel was ineffective in failing to move for a new trial in state court or an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claim, failing to challenge the admissibility of an alleged hearsay statement at the preliminary examination, and advising against raising certain claims on appeal.

A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

First, Petitioner claims that his appellate attorney was ineffective in failing to present "significant and obvious" issues on appeal. Petitioner fails to identify these significant and obvious issues. The Court, therefore, presumes that Petitioner refers to the claims presented in the instant petition. The Court has held that these claims are meritless. Consequently, Petitioner's appellate attorney was not ineffective in failing to

16

present meritless claims.

Petitioner also claims that his appellate attorney was ineffective in failing to file a motion for new trial on the basis of ineffective assistance of trial counsel or to move for an evidentiary hearing on that basis. Petitioner fails to allege what may have been adduced at an evidentiary hearing. Moreover, as discussed above, even assuming that Petitioner's attorney rendered ineffective assistance at the preliminary examination, Petitioner has failed to show that he was prejudiced by her representation.

Petitioner next claims that his appellate attorney should have argued that a police officer was improperly permitted to testify as to the victim's hearsay statement. Petitioner's attorney objected to the admission of this testimony at the preliminary examination. The trial court held that the statement was admissible under the excited utterance exception to the hearsay rule. Petitioner has not shown that this holding was incorrect. Therefore, he cannot establish that his attorney was ineffective in failing to raise this claim on appeal.

Finally, Petitioner claims that his appellate attorney was ineffective in advising against raising certain claims on appeal. Again, Petitioner fails to specify the particular claims his attorney advised against raising. The Court, therefore, presumes Petitioner refers to the claims presented in the instant petition. As discussed, Petitioner's appellate attorney was not ineffective in failing to present meritless claims.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  May 13, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 13, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager